## Dura Seal Products Company, Inc. *v.* Carver et al., Appellants.

Submitted March 23, 1956.   Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Bernard R. Cohn,* for appellants.

*Bertram U. Weinberg,* for appellee.

OPINION BY WOODSIDE, J., July 17, 1956:

This is an appeal from the order of the Municipal Court of Philadelphia granting a new trial after a verdict in favor of the claimants.

The plaintiff obtained a judgment against Jack Carver, individually and trading as General Sales and Service Company and caused execution to be issued against household furniture contained in the Carver home at 5950 Windsor Avenue, Philadelphia, Pennsylvania.

Carver's wife, Edith, at first claimed that all the personal property belonged to her but thereafter both husband and wife claimed the property as tenants by the entireties. An issue was framed and the case was tried before a jury which found for the claimants. Upon motion of the plaintiff the lower court granted a new trial. Claimants appealed.

The appellants assume a heavy burden. The Appellate Courts of this Commonwealth interfere with the exercise of the judicial discretion of the lower courts in granting new trials only where such discretion has been exercised capriciously, arbitrarily, improvidently or has been palpably abused, or where an erroneous rule of law which, in the circumstances, necessarily controls the outcome of the case is certified by the court below as the sole reason for its action. No alleged erroneous rule of law is here involved. *Beal v. Reading Co.,* 370 Pa. 45, 48, 87 A. 2d 214 (1952); *Mozino v. Canuso,* 384 Pa. 220, 120 A. 2d 300 (1956).

The lower court pointed out in its opinion the following inconsistencies in the claimants' testimony:

"Edith Carver, wife of defendant, in a prior claim in this same case, under oath, filed a property claim declaring the property levied upon was her own property and that her husband had no interest or title there-

in; after that property claim failed, she again takes oath and deposes that the property is that of her and her husband.

"Jack Carver, defendant, on the oral examination, testified, under oath, that he did not own the personal property, that his wife bought it out of her own money and 'it is her home and I guess I am just a boarder'; on the property claim, he swore that the property is a tenancy by entireties.

"The other witness, the mother of the wife claimant, testified that some of the property, claimed as a tenancy by entireties, was hers and not theirs."

Stating that there was "repeated hammering in the course of a speech to the jury that this was the case of a big out-of-state corporation against poor individuals seeking to protect their home," the lower court said: "we feel that in this case, a jury's intention to view the testimony in fairness was impeded by the unnecessary injection of purposeful prejudice through the introduction of extraneous considerations intended to play upon sympathies and consequences rather than in that calm deliberation whose end is to arrive at the truth based upon the relevant testimony and the inferences from that testimony."

We have examined the testimony and find that the statements made by the lower court concerning it are correct. The inconsistencies of the testimony are apparent. They are serious, but they must be weighed in the light of the difficulty a husband and wife, not learned in the law, might have in determining who has title to personal property used for years in family living.

As is customary in trial courts of this state counsel's addresses to the jury were not taken stenographically. The record contains no reference to what was said by counsel. Neither does the record show any ob-

jection to remarks by counsel, nor any reprimand by the trial judge. Presumably there was none. Neither does the record show whether the jury was warned to disregard any remarks of counsel. Presumably it was not.[1]

If counsel exceeds the bounds of propriety, it is the duty of the trial judge to warn counsel and see that any improper argument is promptly discontinued and, if the impropriety is serious enough, to withdraw a juror and continue the case.[2] *Commonwealth v. Weber,* 167 Pa. 153, 163, 31 A. 481 (1895). If it is likely that the supposed impropriety may become relevant to the question of a new trial, the trial judge should order the remarks made part of the record. *Commonwealth v. Mika,* 317 Pa. 487, 489, 177 A. 3 (1955).

It is difficult for an appellate court to consider the impropriety of remarks which are not a part of the record and to which no reference is made in the record. Under such circumstance we ordinarily would ignore the matter entirely. See *Commonwealth v. Wilcox,* 316 Pa. 129, 137, 173 A. 653 (1934). If the impropriety of counsel's remarks were the only ground for granting a new trial in this case we could not affirm on the state of this record. *Faust v. Cotner,* 105 Pa. Superior Ct. 177, 160 A. 155 (1932).

There are times, however, when the tone of counsel's address renders it prejudicial. Arguments to the jury become along with many other things a part of

---

[1] Unless attention is called to improper remarks at the time they are made trial judges sometimes elect not to refer to them later on the theory that ignoring them may be less prejudicial than bringing them again into the jury's mind by directing the jury to disregard them.

[2] Discretion must rest in the trial courts in these matters as justice can be defeated by frequent interruptions of counsel's speech by frivolous objections as well as by improper remarks.

the atmosphere of the case. The atmosphere of a case is difficult to ascertain from the record. *Narciso v. Mauch Chunk Township*, 369 Pa. 549, 551, 552, 553, 87 A. 2d 233 (1952). It is composed not only of the words which are used, but also of the inflections of the voice and the conduct of the participants, even at times the audience reaction. In this connection, and in this connection alone, the trial judge was entitled here to consider remarks of counsel which were not at the time thought serious enough to require objection by opposing counsel or warrant attention of the trial judge or to be made a part of the record.

The trial judge, who breathed the atmosphere of the case, is far more able to determine whether the parties received a fair trial than we are. *Ross v. Crisanti*, 171 Pa. Superior Ct. 117, 90 A. 2d 299 (1952).

Judge PIEKARSKI, an experienced and able trial judge, set forth his reasons for concluding that a new trial should be granted in the interest of justice. We can find nothing to warrant the suggestion that the trial court abused its discretion.

Order affirmed.